IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RICHARD DOYLE,**

   **Petitioner,**

  v.

**UNITED STATES OF AMERICA,**

  Respondent.

**CASE NO. 2:19-CV-1345**
**CRIM. NO. 2:16-CR-145**
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Chelsey M. Vascura**

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a federal prisoner, brings this Motion to Vacate under 28 U.S.C. § 2255. This matter is before the Court on the Motion to Vacate, as supplemented, Respondent's Response in Opposition, and the exhibits of the parties. For the reasons that follow, the undersigned **RECOMMENDS** that all of Petitioner's claims, with this exception of his claim that he was denied the effective assistance of counsel during pre-trial negotiations, be **DISMISSED.** It is further **RECOMMENDED** that counsel be appointed to represent Petitioner at an evidentiary hearing on his claim that he was denied the effective assistance of counsel during pre-trial negotiations.

Petitioner's unopposed Motion for Leave to File Affidavit in Support (ECF No. 89) is **GRANTED**.

## I.  BACKGROUND

Petitioner challenges his conviction by a jury of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). The United States Court of Appeals for the Sixth Circuit summarized the facts and procedural history of the case as follows:

The following facts were elicited during Doyle's motion to suppress hearing and his subsequent jury trial.

Around 5:00 in the morning on March 18, 2016, Officer Jeffrey Ward of the Columbus Division of Police received a dispatch call about a woman reporting that she had been threatened by a man with a gun in the area of 18th and Cleveland Avenues in Columbus, Ohio. Officer Ward reported to the area, where the victim—Theresa Montgomery—got his attention. She explained that a young black man wearing glasses and driving a tan Cadillac had pulled up next to her and told her to get in the car. When she refused, he pulled out a gun, loaded it, and again demanded that she get in the car. At this point, she complied. Once in the car, Doyle threatened to kill Montgomery. She begged for her life, and he let her out. She then ran away and called the police to report what had happened.

While Montgomery relayed this story to Officer Ward, Doyle happened to drive by in a silver Cadillac. Montgomery told Officer Ward that he was the man who accosted her and he got into his patrol car to follow Doyle. After Doyle failed to signal a turn, Officer Ward called for backup to make a felony traffic stop.

Officer Ward ran his license plate to discover, among other things, that the vehicle's registered owner (Richard Doyle) had previously been convicted of a felony and had a suspended license. Once backup arrived, the officers pulled Doyle over. They then handcuffed him and placed him in the back of Officer Ward's patrol car. Officer Romans—one of the backup officers—went to the vehicle to make sure there was nothing else inside and to see "if there was anything in plain view." He found a bullet in the driver's seat and a loaded magazine between the driver's side door and the driver's seat. He then looked under the driver's seat and found a gun. Officer Romans testified that the gun was loosely placed and could be "easily rocked forward or back." At some point after Doyle was Mirandized, he told Officer Romans that he knew there was a gun in the car, but that he thought it was in the trunk.

Before trial began, Doyle moved to suppress the evidence, arguing that the officers lacked probable cause to arrest him and that there was no basis to search his car. The district court denied that motion, finding that Officer Ward had no reason to discredit Montgomery's story and was justified in relying on it when he made the arrest.

At the suppression hearing, it became clear that Montgomery's mental health—she was bipolar—might be an issue at trial. The district court indicated that it was not going to allow cross-examination into Montgomery's mental health unless there was "some medical way of showing that [bipolar disorder] impairs recollection, ability to perceive, all those sorts of things." As such, the district court asked that the issue be cleared up before trial started four days later. The next day, during a telephone conference, the district court again pointed out that defense counsel would need to "show that somehow her judgment was impaired." Absent such a

showing, the district court declined to allow cross-examination into this topic, also noting that the case "doesn't rest on her testimony" because the reliability of her statements only related to the validity of the arrest—an issue the court had already decided. That notwithstanding, the district court gave Doyle permission to voir dire Montgomery outside the presence of the jury on this issue. Doyle declined to do so.

Doyle requested a continuance in order to gather more information on Montgomery's mental health. The district court denied Doyle's motion, explaining that it would be an inconvenience to the prospective jurors that were scheduled to arrive for the start of the trial in three days. Nevertheless, Doyle ultimately did ask Montgomery about her mental health at trial, and she responded that she only began having mental health issues after her interactions with Doyle that night.

After the first day of trial, two jurors saw Doyle outside of the courtroom after he had been handcuffed. The court spoke with the two jurors separately to determine what they had seen and whether they could remain impartial. Juror 609 did not mention the handcuffs; but, Juror 615 said she had seen them. The district court gave Juror 615 a curative instruction that she should not read anything into the fact that Doyle was handcuffed and that she must not mention anything to the other jurors. Juror 615 responded that she would have no problem doing so and that she just assumed it was "protocol" for a criminal defendant to be handcuffed. The court then allowed both jurors to remain on the jury. In any event, before the jury retired to deliberate, both parties agreed to replace Juror 615 with the alternate juror.

Prior to deliberations, the district court instructed the jury, among other things, on the theory of deliberate ignorance. The court told them "[n]o one can avoid responsibility for a crime by deliberately ignoring the obvious. If you are convinced that the defendant deliberately ignored a high probability that his or her actions violated the law, then you may find that he or she acted knowingly." This instruction was given over Doyle's objection. The jury returned a guilty verdict and the district court entered judgment. This appeal followed.

***

Doyle offers six arguments as to why we should vacate his conviction. First, he argues that there was no probable cause to arrest him from the outset, and that any evidence seized as a result of the ensuing search should have been suppressed. Second, he argues that the district court erred in denying him the opportunity to cross-examine Montgomery about her mental health. Third, he argues that he should have been granted a continuance in order to gather more evidence and information concerning Montgomery's mental health. Fourth, he argues that Officer Romans should not have been allowed to offer expert testimony at trial. Fifth, he argues that he was denied a fair trial after two of the jurors saw him outside of the courtroom while he was handcuffed. Sixth, he argues that the district court erred in giving the jury a deliberate ignorance instruction.

*United States v. Doyle*, 720 F. App'x 271, 273-75 (6th Cir. 2018) (footnote omitted). On April 6, 2017, the Court imposed a sentence of 100 months imprisonment to be followed by three years supervised release. (ECF No. 59.) On January 8, 2018, the Sixth Circuit affirmed Petitioner's convictions. *Id.*

On April 10, 2019, Petitioner filed this Motion to Vacate under 28 U.S.C. § 2255. (ECF No. 71.) In his Motion, Petitioner asserts that he was denied the effective assistance of counsel because his attorney failed to investigate Montgomery's mental health prior to trial, failed to secure an expert to evaluate Montgomery's mental health records, failed to *voir dire* Montgomery outside of the presence of the jury to determine the extent of her mental illness, failed to subpoena a witness to the suppression hearing or object to the in-court identification of Petitioner, and failed to properly advise Petitioner during pre-trial proceedings. (ECF No. 71.) On July 9, 2019, Petitioner amended his § 2255 Motion to add a claim asserting that his conviction violates *Rehaif v. United States*, -- U.S. --, 139 S.Ct. 2191 (2019). (ECF No. 83.) It Respondent's position that Petitioner's claims lack merit.

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

To obtain relief under 28 U.S.C. § 2255, a prisoner must allege either "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of

4

fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).

In addition, "it is well-established that a § 2255 motion 'is not a substitute for a direct appeal.'" *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (quoting *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152, 167–68 (1982))). Accordingly, if a claim could have been raised on direct appeal, but was not, the Court will not consider the claim via a § 2255 motion unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claim previously; or (2) that he is "actually innocent" of the crime. *Ray*, 721 F.3d at 761 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

### III. ANALYSIS

As set forth above, Petitioner maintains that he was denied the effective assistance of counsel. "In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland*, 466 U.S. at 668. *Strickland* requires a petitioner claiming the ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. *Id*. at 687; *Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir.), *cert. denied sub. nom. Hale v. Hoffner*, 134 S. Ct. 680 (2013). A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below an objective standard of reasonableness.'" *Poole v. MacLaren*, 547 F. A'ppx 749, 754 (6th Cir. 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (internal quotation marks omitted)); (citing *Strickland*, 466 U.S. at 687), *cert. denied*, 135 S. Ct.

5

122 (2014). To make such a showing, a petitioner must overcome the "strong [ ] presum[ption]" that his counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 687. "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689). The undersigned considers each of Petitioner's bases in support of his ineffective-assistance-of-counsel claim in turn.

**A.     Pre-trial Negotiations**

Petitioner asserts that he was denied the effective assistance of trial counsel during pre-trial negotiations because his attorneys failed properly to advise him of the strength of the government's case and whether he should enter a guilty plea. Petitioner alleges that his attorneys erroneously advised him that he faced a sentence of fifteen years to life as a career offender, regardless of whether he proceeded to trial or entered a guilty plea. (*Motion to Vacate under 28 U.S.C. § 2255*, ECF No. 71, PAGEID # 786-87; PAGEID # 787 ("Counsel constantly informed defendant that the only plea he could receive was a plea at the guid[e]line and an enhancement for the Armed Career Criminal Act which was a mandatory 15 year prison term.").) Petitioner further alleges that his attorneys never told him that his recommended guideline sentence would be enhanced under the provision of U.S.S.G. § 2X1.1 for the uncharged crime of abduction or kidnapping, thereby increasing his recommended guideline sentence. *See PreSentence Investigation Report*, at ¶¶ 14-16; *Supplemental Addendum to the PreSentence Report*. In short, Petitioner asserts that he did not know that he could obtain a lesser sentence by pleading guilty because his attorneys failed to advise him of potential sentencing ramifications such that he was unable to make an informed decision regarding whether to proceed to trial. Petitioner has

6

submitted a statement from his wife, Maria Doyle, also indicating that defense counsel told her that Petitioner was a career criminal and would likely be sentenced to 15 years. (ECF No. 89-2, PAGEID # 911.)

The right to the effective assistance of counsel extends to the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). "In today's criminal justice system . . . the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant." *Missouri v. Frye*, 566 U.S. 134, 144 (2012). The Sixth Circuit has explained that the familiar *Strickland* analysis applies to a petitioner's claim that counsel was ineffective during plea negotiations:

> The two-prong ineffective assistance of counsel analysis that the Supreme Court announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies to claims that counsel's performance was constitutionally deficient during plea negotiations. *Hill*, 474 U.S. at 58, 106 S.Ct. 366, 88 L.Ed.2d 203. A petitioner who claims that he was denied effective assistance of counsel with regard to whether or not to plead guilty must prove that (1) counsel rendered constitutionally deficient performance, and (2) there is a reasonable probability that but for counsel's deficient performance, the petitioner would have pled guilty. *Magana v. Hofbauer*, 263 F.3d 542, 547–48 (6th Cir. 2001) (citing *Turner v. Tennessee*, 858 F.2d 1201, 1206 (6th Cir. 1988)). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674.

*Humphress v. United States,* 398 F.3d 855, 859 (6th Cir. 2005). A defendant challenging his attorney's conduct during the plea-bargaining stage bears "a heavy burden." *Whiting v. Burt*, 395 F.3d 602, 617 (6th Cir. 2005). He "must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence." *Short v. United States*, 471 F.3d 686, 692 (6th Cir. 2006) (internal quotation marks omitted). However,

> [t]he decision to plead guilty—first, last, and always—rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction.

7

*Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003). "On the other hand, the attorney has a clear obligation to fully inform her client of the available options." *Id*. "The duty of defense counsel to consult is paramount when a client has to decide whether or not to waive a constitutional right, such as the right to trial." *Miller v. Straub*, 299 F.3d 570, 580 (6th Cir. 2002).

The Sixth Circuit has described the obligations of defense counsel as it relates to advice during the plea negotiations stage as follows:

> A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available. In a system dominated by sentencing guidelines, we do not see how sentence exposure can be fully explained without completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time.

*Smith*, 348 F.3d at 553 (citation omitted); *see also Moss v. United States*, 323 F.3d 445, 474 (6th Cir. 2003) (holding that failure of defense counsel to "provide professional guidance" regarding a defendant's sentencing exposure may constitute deficient assistance). "[I]f counsel failed to provide the defendant with an estimated range of the penalties that could result from a trial conviction, the prejudice prong is presumptively satisfied if the difference between the length of the sentence proposed in the Government's plea offer and the sentence imposed after a trial conviction was substantial." *Sawaf v. United States*, 570 F. App'x 544, 547 (6th Cir. 2014) (citing *United States v. Morris*, 470 F.3d 596, 602 (2006); *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003)).

In response to Petitioner's allegations, Respondent has submitted the *Affidavit of Barshaunda N. Robinson*, one of Petitioner's former defense attorneys. Robinson indicates that

prior to the filing of the Indictment, defense counsel discussed Petitioner's prior criminal history with him, as well as the potential statutory enhancements. Robinson avers that she also reviewed the Indictment with Petitioner prior to his arraignment and advised him that he faced statutory penalties of up to 10 years imprisonment. Robinson denies advising Petitioner that he would receive a sentence of 15 years to life. According to Robinson, Petitioner wanted to exercise his constitutional right to a speedy trial. She states that, "Throughout the representation, Mr. Doyle maintained he did not want to plead guilty, and that he wanted to assert his constitutional right to a jury trial." (*Affidavit of Barshaunda N. Robinson*, ECF No. 85-1, PAGEID # 860.)

> Prior to trial, Ms. Khan and I had multiple discussions regarding how the Sentencing Guidelines would affect Mr. Doyle's sentence. Those discussions included our concerns about the enhancements that would apply. I discussed the advisory guidelines with Mr. Doyle and explained our concerns about the potential enhancements.

(*Id*. at PAGEID # 862; *see also Affidavit of Rasheeda Z. Khan,* ECF No. 85-2, PAGEID # 865-66) (same).) Thus, the record reflects factual disputes regarding (1) whether Petitioner would have accepted a guilty plea offer and (2) whether his attorneys properly advised him of the potential sentencing ramifications he faced.

In *Lafler v. Cooper*, 566 U.S. at 171, the United States Supreme Court recognized the necessity of an evidentiary hearing for determining whether a defendant can establish that, but for his attorney's allegedly inadequate advice, he would have accepted a guilty plea. However, a court need not conduct an evidentiary hearing where the record conclusively establishes no basis for relief. *See Miller v. United States*, 561 F. App'x 485, 493 (6th Cir. 2014), *cert. denied*, 562 U.S. 1017 (2010) (citing *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (quoting 28 U.S.C. § 2255) (internal quotation marks omitted). But "a Section 2255 petitioner's burden 'for establishing an entitlement to an evidentiary hearing is relatively light.'" *Smith,* 348 F.3d at 550

9

(quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)).  Moreover, "[w]here conflicting affidavits present factual disputes, a district court should not resolve the disputed questions without an evidentiary hearing."  *Ugochukwu v. United States*, No. 17-3073, 2018 WL 3602183, at *2 (6th Cir. Apr. 26, 2018) (citing *Pola v. United States*, 778 F.3d 525, 532-33 (6th Cir. 2015)).  In *Miller*, the Sixth Circuit remanded for an evidentiary hearing where the petitioner asserted that he would have pleaded guilty had he known that he faced enhancement of his sentence as an armed career offender and the record reflected a disparity between the sentence he faced under the plea offer and the sentence imposed after trial.  *Miller*, 561 F. App'x at 496.

Here, Petitioner has set forth a substantive ground for relief, the resolution of which requires a determination between competing factual assertions.  *See Hill v. Lockhart*, 474 U.S. at 58-59.  The undersigned therefore concludes that an evidentiary hearing is required to resolve the disputed questions.

*Comrie v. United States*, 455 F. App'x 637, 640 (6th Cir. 2012), cited by Respondent, does not persuade the undersigned to reach a different conclusion.  (*See Government's Response to Defendant's 28 U.S.C. § 2255 Petition*, ECF No. 85, PAGEID # 846.)  In *Comrie*, the federal district court conducted an evidentiary hearing before concluding that the petitioner's allegations were not worthy of credit and denying the claim of ineffective assistance of counsel during plea negotiations.  *Comrie*, 455 F. App'x at 639.

It therefore is **RECOMMENDED** that counsel be appointed on Petitioner's behalf to represent him at an evidentiary hearing on his claim that he was denied the effective assistance of counsel during plea negotiations.

### B. Mental Health Investigation

Petitioner next asserts that his attorneys improperly failed to investigate Montgomery's mental health records, failed to present an expert witness to testify that Montgomery's testimony was unreliable in view of her mental health, and failed to conduct a *voir dire* of Montgomery outside of the presence of the jury to inquire about her mental health.

Attorney Barshaunda N. Robinson, one of Petitioner's former defense attorneys, has responded in relevant part to these allegations as follows:

> Between July 20, 2016 and April 6, 2017, I along with Rasheeda Khan, represented the Petitioner, Richard Doyle . . . during this time period, I was an Assistant Federal Public Defender who was representing Mr. Doyle pursuant to the appointment of the Court.
>
> ∗∗∗
>
> Mr. Doyle informed me he wanted to exercise his constitutional right to a speedy trial.
>
> Throughout the representation, Mr. Doyle maintained he did not want to plead guilty, and that he wanted to assert his constitutional right to a jury trial.
>
> On July 26, 2016, the Government disclosed initial discovery materials.
>
> Afterwards the Government disclosed a recorded video statement from Mr. Doyle acknowledging that he had previously handled and/or touched the firearm that was subsequently found in the vehicle he was driving on the date of his arrest.
>
> The discovery materials also included the name of Theresa Montgomery, a witness identified by Columbus Police. The discovery materials included a last known address, but no other identifying information about Ms. Montgomery.
>
> The discovery materials and a search of local court records revealed that Ms. Montgomery failed to comply with subpoenas issued by Franklin County Municipal Court and Franklin County Common Pleas Court. She also reported that she did not want to press any charges against Mr. Doyle or participate in any court proceedings.
>
> Prior to trial, co-counsel Rasheeda Khan and I performed background investigatory work on Ms. Montgomery that included:

11

a. an Accurint Report,
b. search of 911 calls made from her last known phone number,
c. search of 911 calls and/or police runs made to her last known address,
d. search of arrest records, and
e. canvassing of the neighborhood surrounding her reported last known address.

During our neighborhood canvassing efforts, we came into contact with an individual who claimed to be Ms. Montgomery's sister. This individual also disclosed the following information:

a. Ms. Montgomery was on disability for reasons that included a mental disability, that she believed to be bipolar disorder.
b. She had not seen Ms. Montgomery for several weeks.
c. Ms. Montgomery's disability payments were issued to a third party.
d. She recalled seeing Ms. Montgomery receive a subpoena to appear in court and Ms. Montgomery threw the subpoena in the trash.
e. Someone from Columbus Police had recently spoken to her and asked her where to find Ms. Montgomery.

At the time I learned about the possibility that Ms. Montgomery was bipolar (sometime between September 2, 2016 and September 16, 2016), Ms. Khan and I had collected all immediately available information about Ms. Montgomery. When I learned this information, I did not believe there was enough time to subpoena mental health records in compliance with the Federal Rules of Criminal Procedure (requiring a court order and notification of the victim), and receive them before the scheduled trial date of September 26, 2016.

I did not retain an expert to evaluate Ms. Montgomery's mental health condition because I did not have enough information for an expert to evaluate.

When I learned about the possibility that Ms. Montgomery was bipolar, Ms. Khan and I shared this with Mr. Doyle and discussed [m]y concerns about not having enough time to further investigate. Mr. Doyle would not agree to a continuance and stated that he did not believe Ms. Montgomery would appear at trial. I explained to Mr. Doyle that the government could force Ms. Montgomery to appear at trial.

Prior to trial, Ms. Khan and I had numerous conversations with Mr. Doyle about the fact that insisting on a speedy trial and going to trial on the first setting would limit the investigative work and preparation that could be done prior to trial. We further advised him that this could impact the outcome at trial.

Each time that Mr. Doyle and I discussed the need for a continuance, Mr. Doyle refused to waive his speedy trial rights and would not permit his lawyers to request a continuance. Mr. Doyle maintained that a continuance was not necessary because he was confident that Ms. Montgomery would not appear for trial.

***

>On September 22, 2016, the Court conducted a suppression hearing. Although the government did not use Ms. Montgomery as a witness during the hearing, Assistant United States Attorney Sal Dominguez confirmed that Ms. Montgomery would appear for trial.
>
>As of the end of the suppression hearing on September 22, 2016, Mr. Doyle insisted on proceeding to trial on September 26, 2016.
>
>On the evening of September 22, 2016, Ms. Khan went to visit Mr. Doyle at the Franklin County Jail to discuss the need for continuance to obtain further information about Ms. Montgomery. Ms. Khan provided him with a letter memorializing the items they discussed. . . . A copy of the letter is attached to this affidavit.
>
>On September 23, 2016, with Mr. Doyle's consent to a continuance and to waive his speedy trial rights, I filed a motion to continue the trial. . . . The judge conducted a telephone conference and denied the motion to continue.
>
>During trial, the government played the 911 emergency call from the incident which provided a physical description of the driver and the vehicle. Ms. Montgomery testified she was the person who made the 911 call.
>
>Ms. Montgomery testified about her contact with the driver while she was outside of the vehicle, and while she was inside of the vehicle. She further testified that while she was at the scene of the incident, she saw the individual drive by and pointed him out to the responding officer.
>
>Ms. Montgomery then testified that she recognized Mr. Doyle as the driver. I did not object to her in-court identification of Mr. Doyle because I did not believe I had a good faith legal basis to challenge the identification.
>
>I further believed that voir dire questioning of Mr. Montgomery outside of the jury would have had a negative impact, including the risk of allowing the witness to be further prepared for an effective cross examination.

(*Affidavit of Barshaunda N. Robinson*, ECF No. 85-1, PAGEID # 862-63.)

Consistently, Rasheeda Z. Khan, another of Petitioner's former defense attorneys, represents that defense counsel did not retain an expert to evaluate Montgomery's mental health

condition because they lacked sufficient information to provide an expert for evaluation. (*Affidavit of Rasheeda Z. Khan*, ECF No. 85-2, PAGEID # 865-66.)

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "Trial counsel also have an obligation to investigate possible methods for impeaching a prosecution witness and failure to do so may constitute ineffective assistance of counsel." *Aguirre v. United States*, Nos. 2:06-CR-76, 2:10-CV-276, 2012 WL 3191958, at *6 (E.D. Tenn. Aug. 2, 2012) (citing *Vasquez v. Bradshaw*, 345 F. App'x 104, 115 (6th Cir. 2009) (internal citation omitted). However, nothing in the record suggests that further investigation by defense counsel regarding Montgomery's mental health or presentation of an expert would have assisted Petitioner. Likewise, nothing in the record persuades the undersigned that Petitioner's counsel's strategic decision to not conduct a *voir dire* of Montgomery outside of the presence of the jury would have assisted Petitioner. Without such a showing, Petitioner cannot establish prejudice or prevail on a claim of ineffective assistance based on his counsel's failure to investigate. *See Watkins v. Lafler*, 517 F. App'x 488, 496 (6th Cir. 2013) (citing *Moss v. Hofbauer*, 286 F.3d 851, 897 (6th Cir. 2002)); *see also United States v. Hassan*, Nos. 12-cr-20523, 14-cv-11592, 2014 WL 5361942, at *5 (E.D. Mich. Oct. 21, 2014) (a "defendant must 'affirmatively prove prejudice.'") (citing *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009) (other citations omitted)).

The record reflects that defense counsel challenged Montgomery's reliability as a witness on cross-examination. Specifically, cross-examination revealed that Montgomery had prior

criminal convictions for forgery, solicitation, loitering, theft, receipt of stolen property, unauthorized use of property, and domestic violence and that she gave police a different name when she called 911 because she thought that she had a warrant out for her arrest. (*Transcript*, ECF No. 45, PAGEID # 212-13.) Montgomery also acknowledged that she had violated the terms of her probation due to her mental health issues and was incarcerated at that time. (*Id. at* PAGEID # 214.) Montgomery further acknowledged that she lied to police when she called 911 because she did not want to be arrested, that she had significant prior contact with the police due to her "heavy drug addiction" and mental health issues, and that she had called the police at least 15 times that year. (*Id.* at PAGEID # 213-15.) Additionally, Montgomery testified that she could not recall if she was taking her mental health medications on the date of the events at issue. (*Id.* at PAGEID # 215.)

For these reasons, the undersigned finds that Petitioner has failed to establish that he was denied the effective assistance of counsel due to his attorneys' failure to investigate or conduct a *voir dire* of the witness during trial.

**C.     In-Court Identification**

Petitioner next asserts that his attorney improperly failed to (1) request a photo array in order to determine if Montgomery could identify him, (2) object to her in-court identification of him as the person who had threatened her with a gun, and (3) file a motion to suppress Montgomery's in-court identification as unreliable and subpoena Montgomery to the hearing on the motion to suppress evidence. However, Petitioner does not indicate, and the record does not reflect, the basis for any potentially meritorious motion to suppress Montgomery's in-court identification of him. The record likewise does not reflect that Montgomery's testimony would have assisted Petitioner at the hearing on his motion to suppress evidence.

15

Relatedly, the Sixth Circuit held that police had probable cause to arrest the Petitioner, noting that the items seized from Petitioner's car likely also would be admissible under the plain view and inevitable discovery doctrines. *United States v. Doyle*, 720 F. App'x at 276 n.2. The Sixth Circuit offered the following explanation:

> Montgomery's allegations were reasonably trustworthy. She made a 911 call reporting that she had personally been threatened with a gun. She then waited until Officer Ward arrived, at which point she recounted the story to him again, in some detail. Then, during that conversation, she witnessed the same man in the same car that had very recently threatened her. This, at a time when there were rarely any cars out, according to Officer Ward. As the district court pointed out, there was no reason to discredit anything Montgomery said during this conversation. Moreover, by the time Officer Ward pulled Doyle over he was aware that the owner of the vehicle had a prior felony conviction—which would make his possession of a firearm, in accord with Montgomery's story, a crime—and a suspended driver's license. Finally, when Doyle got out of the car, he matched the description of a young black man wearing glasses that Montgomery had provided. These facts support a finding of probable cause and the district court was not clearly erroneous in finding Montgomery's story to be reasonably trustworthy. *See id*. at 522 (noting that certain indicia of reliability justify a finding of probable cause based on an eyewitness allegation—such as the fact that the eyewitness personally observed the crime, was a victim of that crime, and identified the perpetrator of that crime).
>
> Accordingly, we need not proceed to the government's plain view or inevitable discovery arguments. Doyle's arrest was supported by probable cause and the search incident to that arrest was lawful. *See Arizona v. Gant*, 556 U.S. 332, 343, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009) (holding that warrantless search of a vehicle "incident to a lawful arrest" is constitutional where it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle") (citation omitted). Therefore, the evidence seized against him was properly admissible.

*Id*. at 275-76 (footnote omitted).

Montgomery described Petitioner to police and identified his car shortly after the incident in question. Thus, a photographic line-up would not have assisted Petitioner in establishing that her identification of him was unduly unreliable. *See Neil v. Biggers*, 409 U.S. 188, 200 (1972) (a court should consider a witness's opportunity to view the criminal at the time of the crime; the witness's degree of attention at that time; the accuracy of the witness's prior description of the

16

criminal; the witness's level of certainty at the identification; and the length of time between the crime and the identification when determining whether an identification was reliable under the totality of the circumstances). When police pulled Petitioner over, they found a gun under the driver's seat, and a bullet and gun magazine in plain view. Under these circumstances, Petitioner cannot establish that he was denied the effective assistance of counsel based on his attorneys' failure to file a motion to suppress Montgomery's in-court identification of him. *See Merritt v. United States*, Nos. 2:13-cv-02304-STA-dkv, 11-cr-20144-STA-dkv, 2016 WL 447729, at *6 (W.D. Tenn. Feb. 4, 2016) (where the petitioner fails to identify the grounds on which his attorney should have filed a motion to suppress, the claim fails to comply with Rule 2 of the Rules Governing Section 2255 Proceedings and does not provide a basis for relief). In order to establish the denial of the effective assistance of counsel based on an attorney's failure to file a motion to suppress evidence, "the meritorious nature of the motion must be so plain that 'no competent attorney would think a motion to suppress would have failed.'" *Hendrix v. Palmer*, 893 F.3d 906, 922 (6th Cir. 2018) (citing *Premo v. Moore*, 562 U.S. 115, 124 (2011); *cf. Nieto v. United States*, Nos. 1:08-cv-150, 1:05-cr-6, 2011 WL 4473778, at *10 (E.D. Tenn. Sept. 26, 2011) (citing *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000) ("[A]n attorney does not perform deficiently or prejudice his client by failing to file a frivolous motion."). Petitioner cannot satisfy this standard.

For these reasons, the undersigned finds that Petitioner has failed to establish that he was denied the effective assistance of counsel based on his attorney's failure to file a motion to suppress Montgomery's in-court identification.

**D. Cumulative Error**

The record likewise fails to support a claim for the denial of effective assistance of counsel based on cumulative error. "[M]eritless claims or claims that did not result in prejudice cannot be cumulated[.]" *Nieto*, 2011 WL 4473778, at *18 (citing *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005) ("But we have held that, post-AEDPA, not even constitutional errors that would not individually support habeas relief can be cumulated to support habeas relief."); *Warlick v. Romanowski*, 367 F. App'x 634, 641 (6th Cir. 2010); *Pondexter v. Quarterman*, 537 F.3d 511, 525 (5th Cir. 2008) (Agreeing that "meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised").

**E.** *Rehaif*

Finally, Petitioner's claim that his conviction violates *Rehaif* likewise fails. In *Rehaif*, the Supreme Court held that "in prosecutions under 18 U.S.C. § 922(g), 'the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm.'" *United States v. Bowens*, 938 F.3d 790, 797 (6th Cir. 2019) (citing *Rehaif,* 139 S.Ct. at 2200). However, "*Rehaif* did not announce a new rule of constitutional law made retroactive to cases on collateral review." *Moore v. United States*, No. 2:19-cv-02572-TLP-tmp, 2019 WL 4394755, at *2 (W.D. Tenn. Sept. 12, 2019) (citing *In re Palacios*, 931 F.3d 1314, 1315 (11th Cir. 2019) and *United States v. Grigsby*, No. 12-10174-JTM, 2019 WL 3302322, at *1 (D. Kan. July 23, 2019) ("*Rehaif* presented a question of statutory interpretation rather than constitutional rights . . . and . . . has not been made retroactively applicable to cases on collateral review." (internal citations omitted))). Moreover, the record reflects that Petitioner told police that he "knew he was not allowed to have guns[.]" (ECF No. 85-4, PAGEID # 874.) That is, Petitioner knew that based

on his prior convictions, he could not be in possession of a firearm. (ECF No. 85-5.) For this additional reason, the Supreme Court's holding in *Rehaif* does not assist Petitioner. *See Shrader v. United States*, Nos. 1:16-cv-05559, 1:09-cr-00270, 2019 WL 4040573, at *4 n.2 (S.D. West Va. Aug. 27, 2019) (noting that *Rehaif* does not apply where facts do not suggest that the petitioner could bring a non-frivolous claim that he was unaware of his status as a felon at the time of the offense).

## IV. DISPOSITION

For the reasons set forth above, it is **RECOMMENDED** that with the exception of Petitioner's claim that he was denied the effective assistance of counsel during pre-trial negotiations, his claims be **DISMISSED**. It is further **RECOMMENDED** that counsel be appointed to represent Petitioner at an evidentiary hearing on his claim that he was denied the effective assistance of counsel during pre-trial negotiations. In addition, Petitioner's unopposed Motion for Leave to File Affidavit in Support (ECF No. 89) is **GRANTED**.

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE